IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Darryl F. Mills, | ) | C/A No. 3:15-5018-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CarMax, Inc., and CarMax Auto Superstores, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Darryl F. Mills, filed this employment case pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion to dismiss and to compel arbitration. (ECF No. 10.) At issue is whether an arbitration agreement signed by Mills when he applied for employment with the defendants (collectively referred to herein as "CarMax") is enforceable against him. Having reviewed the parties' memoranda (ECF Nos. 10, 11, & 17) and the applicable law, the court finds that the agreement is enforceable; the defendants' motion should therefore be granted.

**DISCUSSION**

**A.    Arbitration Generally**

A litigant can compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., if the litigant can demonstrate: "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the

relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (quoting Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002)).  The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The policy behind the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991).  Thus, courts are to afford a "healthy regard" for the federal policy favoring arbitration, id. at 26, and arbitration agreements are to be "rigorously enforced," Perry v. Thomas, 482 U.S. 483, 490 (1987).  Doubts regarding the scope of issues covered by an arbitration agreement must be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  The United States Supreme Court has specifically held that the FAA and the policies behind it apply in the employment context. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001).

When a question of arbitrability arises, generally the district court, not the arbitrator, decides whether a matter should be resolved through arbitration. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-44 (1995); AT&T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 651 (1986).  This determination, however, is limited to a two-step inquiry:  (1) whether a valid arbitration agreement exists; and (2) whether the specific dispute falls within the substantive scope of the arbitration agreement. See Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999); see also Chorley Enters., Inc. v. Dickey's Barbeque Rests., Inc., 807 F.3d 553, 563 (4th Cir. 2015).

Arbitration is compelled "unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)). If all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is appropriate. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).

**B.      Validity of Arbitration Agreement**

Whether a valid arbitration agreement exists is a question of state contract law.[1]  Kaplan, 514 U.S. at 944; see also Chorley Enters., Inc, 807 F.3d at 563.  Here, CarMax has presented a copy of its Dispute Resolution Agreement (sometimes referred to herein as the "DRA" or "Agreement"), signed by Mills, as well as the related Dispute Resolution Rules and Procedures ("DRRP") modified in 2011.  These appear to be standard documents used nationwide by CarMax with regard to its employees.  In support of CarMax's motion, Assistant Vice President of Human Resources Kimberly Ross declares that Mills, as part of his employment application in 2008, agreed to be bound by the terms of the Dispute Resolution Agreement and the associated Dispute Resolution Rules and Procedures.  (Ross Decl. ¶ 6, ECF No. 10-2 at 3.)  The Agreement provides:

> [B]oth CarMax and I agree to settle any and all previously unasserted claims, disputes, or controversies arising out of or relating to my application or candidacy for employment and employment and/or cessation of employment with CarMax, exclusively by final and binding arbitration by a neutral Arbitrator . . . conducted in accordance with the CarMax Dispute Resolution Rules and Procedures.

(Dispute Resolution Agreement, ECF No. 10-2 at 51.)

---

[1] The parties appear to agree that South Carolina contract law governs this dispute.



Mills's arguments in opposition to CarMax's motion, which are all aimed at the validity or enforceability of the Dispute Resolution Agreement rather than its scope, are unavailing. First, he argues that the FAA does not apply here because his employment did not involve interstate commerce. He contends that the various positions he held with CarMax—Parts Associate, Reconditioning Associate, and Off-Lot Coordinator—did not affect interstate commerce. The duties associated with these positions, he asserts, included reconditioning cars at CarMax's Columbia, South Carolina location or off-lot duties in which he coordinated vehicles to be taken to local third-party vendors. He argues that because he was hired for and worked only at the Columbia, South Carolina location and dealt with vehicles only at that location, his employment did not involve interstate commerce, rendering the FAA inapplicable.

These arguments, however, disregard the breadth of the FAA and fail to acknowledge that "the FAA applies in federal or state court to any arbitration agreement regarding a transaction that in fact involves interstate commerce, regardless of whether or not the parties contemplated an interstate transaction." Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 363 (S.C. 2001) (citing Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265 (1995)). Many courts across the country have recognized that CarMax's associates, even those whose duties do not appear to directly touch an interstate transaction, are involved in interstate commerce, and have therefore found the FAA applicable to their employment contracts. See, e.g., Herrera v. CarMax Auto Superstores Cal., LLC, No. CV-14-776-MWF (VBKx), 2014 WL 3398363, at *2-3 (C.D. Cal. July 2, 2014) (finding, in the circumstance where the plaintiffs were employed as a painter, service mechanic, and service technician, that the employment agreements involved interstate commerce and the FAA applied); see also CarMax Auto Superstores Cal. LLC v. Hernandez, 94 F. Supp. 3d 1078, 1101 (C.D. Cal.



2015) (finding that a declaration from Kimberly Ross similar to the one presented in the instant case showed that the plaintiff's employment contract with CarMax "involved interstate commerce"); Mahmoud v. Carmax Auto Superstores, Inc., No. 3:10CV421, 2011 WL 32518, at *2 (W.D.N.C. Jan. 5, 2011) (noting that CarMax "is a nationwide retailer of new and used cars. There can be no dispute that the Plaintiff's employment relationship with [CarMax] involved and affected interstate commerce"); Johnson v. CarMax, Inc., Action No. 3:10-CV-213, 2010 WL 2802478, at *2 (E.D. Va. July 14, 2010) (finding, in the circumstance where the plaintiffs were employed by CarMax as detailers, no debate that the "parties' relationship touches interstate commerce").

Next, Mills argues that his claims are not subject to the Dispute Resolution Agreement because of oral assurances provided to him by two of his supervisors that the documents would not affect his rights in light of his disability. He further contends that because of those oral representations, CarMax should be estopped from relying upon the Dispute Resolution Agreement. Because such arguments depend on extrinsic evidence of agreements or understandings contemporaneous with or prior to the execution of the contract and seek to contradict, vary, or explain an otherwise complete and unambiguous written instrument, they are precluded by South Carolina's parol evidence rule. See Bluffton Towne Ctr., LLC v. Gilleland-Prince, 772 S.E.2d 882, 891 (S.C. Ct. App. 2015) (lease agreement); McGill v. Moore, 672 S.E.2d 571, 576 (S.C. 2009) (contracts for the sale of land); In re Estate of Holden, 539 S.E.2d 703, 708 (S.C. 2000) (disclaimers of interest in an estate).

Finally, Mills argues that the Dispute Resolution Agreement is unenforceable against him because it is unconscionable. Courts in other jurisdictions addressing CarMax's DRA and DRRP

have also rejected this argument. See Hernandez, 94 F. Supp. 3d 1078; Herrera, 2014 WL 3398363 (applying California contract law). Nor can it fare any better here.

To avoid a contract based on unconscionability under South Carolina contract law, a plaintiff must show (1) an absence of meaningful choice on the part of one party due to one-sided contract provisions; *and* (2) terms so oppressive that no reasonable person would make them and no fair and honest person would accept them. Lucey v. Meyer, 736 S.E.2d 274, 283 (S.C. Ct. App. 2012). As CarMax points out, the documents at issue encourage a person applying for a job at CarMax to seek the advice of counsel and conspicuously inform applicants of the arbitration clause. (See Dispute Resolution Agreement, ECF No. 10-2 at 51-52.) Additionally, the Dispute Resolution Agreement permitted Mills to opt out of the agreement within three days. (Id.) Furthermore, even if the DRA were an adhesion contract, which CarMax disputes based on these provisions, Mills has failed to identify any provision that meets the second prong. See Lucey, 736 S.E.2d at 284 ("[A]n adhesion contract is not per se unconscionable."). When determining unconscionability in the context of arbitration agreements, "the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." Id. (internal quotation marks and citation omitted) (also citing Hooters of Am., Inc., 173 F.3d at 938). Mills has made no argument that the arbitration procedures to be used do not meet those requirements. Cf. Mahmoud, 2011 WL 32518, at *2 ("A review of [CarMax's] Agreement and the

Dispute Resolution Rules and Procedures reveals that the terms are fair and reasonable, not oppressive or one-sided.").[2]

**RECOMMENDATION**

The record shows that the plaintiff's claims against the defendants are covered by a valid arbitration agreement. Those claims must therefore be dismissed. Choice Hotels Int'l, Inc., 252 F.3d at 709-10. Accordingly, the court recommends that the defendants' motion to dismiss and to compel arbitration (ECF No. 10) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 26, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[2] Mills presents a conclusory argument that the 2011 version of the Dispute Resolution Rules and Procedures cannot be enforced against him because he does not *recall* seeing notice from CarMax that the Dispute Resolution Rules and Procedures were being modified; however, this statement is insufficient to reasonably rebut Ross's declaration that the modification procedures were followed and the changes were properly posted. See Herrera, 2014 WL 3398363, at *5 (finding that the "DRRP as modified is the applicable agreement").

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).